## Cincinnati, New Orleans & Texas Pacific Railway Company, et al. v. Richardson.

(Decided November 23, 1911.)

### Appeal from Boyle Circuit Court.

1.   Railroads—Personal Injury—Action for Damages—Peremptory Instruction.—In an action for damages for personal injury against a

railroad and its engineer, the evidence shows that the plaintiff, an employe, upon finishing his work, started for his home, across the tracks in the railroad yards at a time and place where the presence of persons on the track should have been reasonably anticipated, and that before stepping upon the track where he was injured he saw an engine standing still, and just as he stepped upon the track the engine was suddenly started without warning of any kind, and injured him, and there is no evidence to the contrary, an instruction directing a verdict in favor of plaintiff was proper.

2. Verdict—Excessive.—In an action for damages for personal injury, evidence as to extent of plaintiff's injuries examined and a verdict for $8,750.00 held excessive.

JOHN GALVIN, GEO. E. STONE, CHARLES H. RODES for appellant.

ROBERT HARDING, EMMETT PURYEAR for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

Plaintiff, J. D. Richardson, brought this action against the Cincinnati, New Orleans & Texas Pacific Railway Company, Morgan Crane and Zay Sims, to recover damages for personal injuries alleged to have been due to their negligence. The jury returned a verdict in his favor, against the railway company and Morgan Crane, its engineer, for the sum of $8,750. From the judgment predicated thereon, the railway company and Crane appeal.

Upon the conclusion of plaintiff's evidence the defendants declined to offer any evidence in their behalf, and the trial court peremptorily directed a verdict in favor of plaintiff.

It is the contention of appellants that they were entitled either to a peremptory instruction in their favor, or to have the question of their negligence and the contributory negligence of appellee submitted to the jury.

Appellee's injuries were received under the following circumstances: Appellee was in the employment of the railway company, and about midnight on December 17th, 1909, he, with the wrecking crew, left the railway yard in Danville on a wrecking train composed of one engine and five or six cars, for the purpose of going to a point a few miles distant to remove a wreck from the track. Upon the completion of their work the crew returned to the Danville yard, about two o'clock, a. m. The wrecking train was stopped in the yard to permit the members

of the crew to leave and go to their homes, and also to leave the train for the remainder of the night. After stopping in the yard the engine was cut loose from the train. Appellee and the other members of the crew took the most direct route to their respective homes. Appellee's home was on the east side of the yard, about 500 yards from where the train stopped. Appellee was accompanied by William Sears, another member of the crew. He first proceeded north and then turned to the east and went in that direction across the railway tracks in the yard. As they were proceeding across the track on which appellee was injured, he looked to the north and saw the yard engine standing still, about twelve or fifteen feet from where he was struck. The tender of the engine was towards him and the headlight thereon was burning. Knowing that no backward movement of the engine would be made unless those in charge of it first gave notice of their intention to do so, by ringing the bell or blowing the whistle; he and Sears started across the track. Just as they got on the track the engine, without warning of any kind, suddenly started. Sears got across, but appellee was struck and injured. M. C. Bryant, another witness, corroborates appellee's testimony in certain respects. He testified that he was about twenty feet distant from appellee when the latter was struck. He did not notice any ringing of the bell or blowing of the whistle. When he first saw the engine, it was about fifty or seventy-five feet from where appellee was struck. Did not know how far the engine was from appellee when he first saw it, because he did not see appellee until the engine hit him. Appellee was between the rails when he was struck.

As the accident occurred in the railway yard just after the arrival of the wrecking crew, the time and place were such that the presence of persons on the tracks should have been reasonably anticipated by those in charge of the yard engine, and it was, therefore, their duty to keep a lookout for persons using the tracks and to give them timely warning of any movement of the engine by ringing the bell or blowing the whistle. As appellants failed to introduce any evidence on this point, and the evidence that no warning was given is all one way, it follows that the negligence of appellants was fully established. That being true, there was no question for the jury upon this score.

The only remaining question, then, is, whether or not

there was conclusive evidence of contributory negligence on the part of appellee, or sufficient evidence to take the case to the jury.

Counsel for appellants argue that appellee's own statements, and that of his witness, Bryant, tend to show that he knew the engine was moving at the time he stepped upon the track, and that if this be true he was guilty of contributory negligence as a matter of law, even though those in charge of the engine failed to give him any warning of the movement of the engine, for the only purpose of such warning was to apprise him of that which he already knew. It may be conceded that if he knew the engine was moving, and attempted to cross the track immediately in front of it, he would be guilty of such contributory negligence as would preclude a recovery. But, viewed in the light most favorable to appellants, the evidence fails to show that appellee, with knowledge that the engine was moving, attempted to cross the track. True, appellants call our attention to certain answers of appellee, which, if standing alone and unexplained, might tend to support their contention. The confusion arises from the character of questions propounded. Sometimes he was asked where he was when he first discovered the engine; then again, he was asked where he was when he first discovered the engine was moving. Whenever his attention was directed to the difference between the two statements, he stated, emphatically and in language that can not be misunderstood, that before he stepped upon the track he saw the engine standing still, about twelve of fifteen feet from him, and he did not discover the engine in motion until he actually stepped upon the track. While Bryant does say that when he first discovered the engine it was fifty or seventy-five feet away, he does not state that the engine was then in motion. So there is neither direct evidence nor any facts from which it could be reasonably inferred that appellee, before stepping upon the track, knew that the engine was moving, and that he attempted to cross the track immediately in front of it. That being true, the trial court did not err in refusing to hold, as a matter of law, that appellee was guilty of contributory negligence, or in refusing to submit the question of his contributory negligence to the jury.

There is complaint, however, that the verdict is excessive. According to appellee's testimony, he received bruises on his side, back and head. His skull, at the base

of his brain, was fractured. Blood was oozing from one of his ears, and the drum was ruptured. There was also a fracture of the small bone of the ear, and a cut over his left eye. He was rendered unconscious by his injuries, and remained in that condition for several days after being carried to Dr. Cowan's hospital in Danville. After about thirty days he left the hospital. At that time his head was drawn over to one side. He complained of seeing two objects at one time; whereupon Dr. Cowan furnished him glasses which remedied the defect in his vision. He was almost totally deaf in his left ear. After leaving the hospital he attempted to drive a delivery wagon for a while, but found that he was unable to do any hard work. Since the accident his head pains all the time.

Dr. Cowan, who was introduced as a witness by appellee, testified that appellee's left ear was not injured or affected by the accident. The condition of this ear looked like an old suppurative scar—an old abscess. Appellee had told him of suffering from abscesses in his ear prior to the accident. In his opinion appellee's hearing in his left ear was destroyed before the accident, and his hearing in his right ear was somewhat diminished by the accident. Upon being asked to tell the jury whether or not appellee had sustained any permanent injury, so far as he was able to discover or determine from his investigations or examinations of him, witness said: "I have been able to discover none. He has a scar across the drum membrane caused by the rupture of his right ear, and I have examined as regards his hearing in that ear, and while his hearing is not perfectly normal, he has fairly good hearing in his right ear." In answer to the question, "What was the condition of his hearing in his left ear before the accident?" he said: "I can only judge that by the condition I found in his left ear after the accident, having never seen him before. I found a condition which would lead me to believe he had no hearing in his left ear before the accident." In another place, in answer to the question, "State whether or not, Doctor, there was anything you discovered in Mr. Richardson's condition that showed any permanent impairment of his physical condition in any way?" the witness said, "No, sir."

While it is argued by counsel for appellee that the latter's loss of hearing in his left ear must have been occasioned by the injuries received at the time of the acci-

dent, because his left side was next to the engine that struck him, it is just as probable that his injuries were received by being struck by the engine and thrown to the ground on his right side. Here, then, we have a case where appellee testifies that his injuries were permanent, while the physician whom he introduced states, emphatically, that his injuries are not permanent. Even if it be conceded that his hearing in his left ear was destroyed by the accident, yet in view of the fact that all his other injuries, bruises and cuts, have been healed, it is doubtful if a verdict for $8,750.00 should be sustained. In view, however, of the great uncertainty on this question, and that the only physician who testifies states that appellee's injuries are not permanent, we cannot resist the conclusion that the amount of the verdict is so excessive as to strike us at first blush as being the result of passion or prejudice on the part of the jury. In such a case the verdict will not be permitted to stand.

Judgment reversed and cause remanded for a new trial consistent with this opinion.